MORRIS SCHECHNER, Plaintiff, v. BROAD DEVELOPING CO., INC.,
Defendant.

City Court of New York, June 29, 1927.

Vendor and purchaser — action by assignor of purchaser to recover down
payment — plaintiff's assignor contracted to sell lots and, through
dummies, to purchase houses — plaintiff's assignor had contract to
purchase lots from third person — present contract stipulated that it
would be canceled if good title on terms specified could not be delivered
by plaintiff's assignor — inability of plaintiff's assignor to finance pur-
chase of lots sold to defendant did not give right to cancel.

The plaintiff's assignor entered into a contract to sell certain lots to the defendant,
and through dummies he agreed to purchase from the defendant certain houses.
The purchase price of the houses was $6,500 more than the sale price of the lots
and plaintiff's assignor deposited $1,500 with defendant. This action is to
recover $1,500 deposited, on the theory that the contract was canceled. The
contract provided that if the plaintiff's assignor could not deliver a good and
marketable title upon the terms and conditions set forth, then it should be
canceled. Plaintiff's assignor did [not have a right to cancel the contract on
the ground that he was unable to finance the purchase of the lots which he sold
to the defendant, for the clause in question gave the right of cancellation only
in case a good title could not be delivered by the plaintiff's assignor.

ACTION to recover amount paid by plaintiff's assignor on land
contract.

*Herman Schechner* [*John Bogart* of counsel], for the plaintiff.

*Frank A. Bellucci*, for the defendant.

EVANS, J. On November 13, 1926, plaintiff's assignor entered
into a contract with the defendant, by which he sold to the defend-
ant fifteen lots located on Tenbroeck avenue, in The Bronx. At
the same time, the defendant entered into five separate contracts
with persons who concededly were " dummies " for plaintiff's
assignor, whereby the defendant agreed to sell these " dummies "
certain houses located in Elmhurst, L. I. The amount required
to be paid by the " dummies " for the Elmhurst houses exceeded
by $6,500 the amount required to be paid by the defendant for the
Tenbroeck avenue lots. Plaintiff's assignor paid to the defendant,
on account of this $6,500, the sum of $1,500, which is the sum sought
to be recovered here, and the balance of $5,000 was to be paid upon
the closing of title.

Plaintiff's assignor did not own the lots which it was selling to
the defendant, but merely had contracts to purchase them. Accord-
ingly, a stipulation was put into the contract, which reads as follows:

" It is understood and agreed that the seller herein is not the record fee owner of said premises, but is under contract to purchase the same and should it be unable to deliver a good and marketable title *upon the terms and conditions above set forth,* then this contract shall be cancelled and become null and void, and neither of the parties shall be liable to the other for damages, except that the seller shall return to the purchaser the deposit paid on the signing of this contract and the Title Company's charges, if any, for the examination of title.   In the event of a cancellation of this contract, then the contracts entered into between the Broad Developing Co., Inc., Ida Stern, Rose Stern and Belle Schechner for the purchase of the premises shall likewise be cancelled and become null and void upon the same terms and conditions."

Ida Stern, Rose Stern and Belle Schechner were the " dummies " representing the plaintiff's assignor.

Shortly prior to the adjourned date of closing, plaintiff's assignor took the position that it could not convey title upon the terms and conditions fixed in its contract with defendant.   The reason assigned was that plaintiff's assignor had purchased the property from the corporation known as the " Tenbroeck Development Corporation," which was the owner of the lots.   Under the terms of its contract with the Tenbroeck Development Corporation, the purchase price of each of the lots was $2,500.   That amount was to be paid in monthly installments, and the contract contained the following provision: " The purchaser shall have the privilege at any time from the date hereon — to pay up to 50% of the purchase price herein provided to be paid and accrued interest, and upon such payment, the seller will cause to be executed and delivered to the purchaser a full covenant and warranty deed — and will accept the balance of 50% of the purchase price by the purchaser executing and delivering to the seller, his bond secured by purchase money mortgage covering said premises for the said balance, payable in twelve equal quarterly installments, due on or before three years from the date thereof   *   *   *."

Plaintiff's assignor could take title to the lots by paying $1,250 cash on each lot, and by giving a mortgage on each lot for the balance of $1,250, which mortgage of $1,250 was to be paid in twelve equal quarterly installments.

Under the terms of its contract with the defendant, however, it is provided that the purchase price of the fifteen lots is $37,500, which makes the purchase price of each lot $2,500.   Plaintiff's assignor was, therefore, selling the lots to the defendant at the same price at which it had purchased the same from the Tenbroeck Development Corporation.   However, the terms of the mortgage

as fixed in the contract of plaintiff's assignor with defendant were different from the terms of the mortgage as fixed in the contract between plaintiff's assignor and the Tenbroeck Development Corporation, in that the agreement with the defendant provided that each lot is subject to a mortgage in the sum of $1,500, whereas its contract with the Tenbroeck Development Corporation fixed the mortgage at $1,250.

Upon the trial it was conceded that the Tenbroeck Development Corporation had a good and marketable title, but plaintiff's assignor said that it could not convey title upon the terms and conditions specified in its contract with the defendant, for the reason that the other party to the Tenbroeck contracts refused to modify the mortgage terms thereof. The Tenbroeck Corporation wrote plaintiff's assignor: " We have taken up your request to have us give you title upon payment by you of 40% of the contract price, and after consideration we cannot give you title to the aforesaid property, except upon payment as called for under the terms in our contract with you — to wit: 50%."

Had the Tenbroeck Development Corporation consented to accept forty per cent instead of fifty per cent in return for a deed, then plaintiff's assignor would have had to pay the Tenbroeck Development Corporation forty per cent of the purchase price of each lot, and the balance of sixty per cent would have been paid by the execution of the bond and mortgage. Forty per cent of $2,500, which was the purchase price of each lot, is $1,000, and sixty per cent is $1,500, which would have been the amount of the mortgage on each lot. By the refusal of the Tenbroeck Development Corporation to change the terms of its contract, plaintiff's assignor said that it was rendered unable to convey title to the defendant upon the terms and conditions contained in its contract, and, therefore, on February 8, 1927, it wrote to defendant to that effect, and stated that it elected to terminate the contract and demanded the return of the $1,500. Upon defendant's failure to comply with that demand this suit was instituted.

The question for determination is whether the parties intended by their contract that the vendor have the right to cancel the contract because of a defect in the title that might be found affecting its marketability, or for inability to carry out the contract because of the financial reasons or practical motives involving the " terms and conditions " provided therein, or for both reasons.

I think the language of the contract is susceptible of but one construction, and that was that the right of cancellation was given only for failure of ability to deliver a good and marketable title. The clause setting forth the understanding of the parties, that the

seller was not the owner of the fee but only under contract to purchase the property, subject to the contract, shows that the parties intended to guard against any defect in title, and to give the vendor an opportunity to save himself from any liability, in the event that a flaw in the title was found. That construction naturally follows, in my judgment. Because the phrase " upon the terms and conditions above set forth " was appended to the clause, intended to protect the vendor from an unmarketable title, gives rise to plaintiff's contention that his assignor could cancel, unless he could obtain a change of terms in the Tenbroeck contracts, so that the cash outlay in the transaction would be suitable to the vendor. The appended phrase, " upon the terms and conditions above set forth," refers to the terms and conditions of the contract between the parties and not to the Tenbroeck contracts. If the parties intended to put the cancellation clause in operation, in the event that the vendor could not meet the financial engagements required by the Tenbroeck contracts, more appropriate language should have been used. It may be that the vendor had in mind, or believed, that the language used in the contract protected him, in the event that he found himself unable, financially, to meet both the contract at bar and the Tenbroeck arrangements. Such mental reservations, however, cannot operate to aid in the construction of meaning of the English language.

Judgment for defendant.